```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

ROBERT G. BLANCHARD                 :   BK No. 11-13755
          Debtor                            Chapter 13

- - - - - - - - - - - - - - - - - -x
```

### DECISION AND ORDER DENYING DEBTOR'S MOTION
### TO ENFORCE AUTOMATIC STAY

APPEARANCES:

    Kyle Zambarano, Esq.
    Attorney for Debtor
    ADLER POLLOCK & SHEEHAN, P.C.
    One Citizens Plaza, 8th Floor
    Providence, Rhode Island 02903

    Douglas H. Smith, Esq.
    Attorney for Reservoir Avenue Associates
    140 Reservoir Avenue
    Providence, Rhode Island 02907

**BEFORE ARTHUR N. VOTOLATO United States Bankruptcy Judge**

BK No. 11-13755

Heard on the Debtor ("Blanchard's") Motion to Enforce or Impose the Automatic Stay, 11 U.S.C. § 362, and for an order directing a Rhode Island state court to vacate its decree foreclosing the tax title to "property" in North Smithfield ("the Town"), Rhode Island.  Reservoir Avenue Associates ("Reservoir"), the purchaser of the property from the Town, and the holder of the foreclosure judgment, objects.

## **BACKGROUND AND FACTS**

Blanchard has filed three Chapter 13 cases since 2003, and this dispute involves events that took place during the administration of his 2008 case that was filed on August 28, 2008. That case was dismissed on October 22, 2010, after denial of confirmation of his plan, followed by Blanchard's failure to preserve his rights under R.I. LBR 3015-3(e).[1]  At that time, the title to the property was in the name of Cubby, Inc. ("Cubby"), a Delaware corporation with its principal place of business in North Smithfield, Rhode Island.[2]

---

[1] "If confirmation is denied, the Court may enter an order dismissing the Chapter 13 case, unless ... (1) the debtor files an amended plan" or takes other action such as moving for reconsideration or taking an appeal.  Blanchard did not file an amended plan or take any other action under the rule.

[2] The property, an unimproved lot, abuts Blanchard's residence at 132 Brentwood Drive, North Smithfield, which is also Cubby's mailing address.

BK No. 11-13755

At a tax sale held on October 24, 2007, pursuant to R.I. Gen. Laws §44-9-1, *et seq.*, the North Smithfield Tax Collector conveyed the property to Reservoir, and the tax sale deed was recorded on October 30, 2007. On September 29, 2008, at the expiration of the statutory one year waiting period (after Blanchard had filed his 2008 bankruptcy case) Reservoir commenced an action to foreclose the tax title.[3] In January 2009, Cubby answered Reservoir's complaint, representing that it had the ability to pay the amount necessary to redeem the property. On December 16, 2009, the Superior Court Judge set the terms of redemption (payment of $14,584.85, with a per diem of $2.92), to be accomplished by January 6, 2010. Cubby failed to meet the redemption terms, and on January 7, 2010, the Superior Court decree foreclosing Cubby's right of redemption was entered. Thereafter, on March 14, 2011, Reservoir conveyed the property to Beachwood Builders, LLC, for $50,000.[4]

---

[3] The other defendants in the foreclosure action are Cubby, Inc.'s mortgagee (not Blanchard), and others who held recorded attachments, including the IRS. The present encumbrances exceed $200,000, not including real estate taxes paid to the Town by Reservoir. R.I. Gen. L. § 44-9-1, provides that a lien for real estate taxes is "superior to any other lien, encumbrance or interest in the real estate whether by way of mortgage , attachment or otherwise," and "[o]nce the foreclosure decree has been entered, the title conveyed by the tax collector's deed becomes 'absolute'". *Picerne v. Sylvestre*, 113 R.I. 598, 600, 324 A.2d 617 (1974).

[4] There is no allegation that Beachwood Builders was not a purchaser for value.

2

BK No. 11-13755

Blanchard now asserts, as president and sole shareholder, that when Cubby was dissolved in 2005,[5] under Delaware law he acquired an equitable interest in Cubby's only asset, the North Smithfield property. Blanchard also asserts that Reservoir had notice of his 2008 bankruptcy when, on March 5, 2009, he amended his Schedule E to include the Town of North Smithfield as a creditor in the amount of $13,737.37,[6] and served that amendment on Reservoir's attorney. Blanchard's 2008 bankruptcy papers do not reference any interest in Cubby as an asset, and do not list the Cubby mortgage as an encumbrance. Finally, Reservoir is not listed as a creditor, even after Blanchard amended his bankruptcy Schedule E. Blanchard's 2011 Statement of Affairs and schedules in his current bankruptcy case do not mention Cubby or the property, except for a brief statement of a "possible lawsuit relating to an improper Tax Sale of adjoining property to domicile." There is no reference anywhere to Reservoir or to the mortgagee of the property.

---

[5] The dissolution was actually the result of a mistake, when officers of another corporation with a similar corporate name filed dissolution papers with the Delaware Secretary of State, and incorrectly named Cubby, Inc., as the entity to be dissolved.

[6] This figure was taken from an unsigned letter (Debtor's Ex. B) dated October 30, 2008, addressed to Cubby by Reservoir's attorney and sent to Blanchard's attention at 132 Brentwood Drive. Reservoir was not a creditor of Blanchard, and there is no apparent reason why the Debtor served a copy of his Amended Schedule E on a party unrelated to his bankruptcy case.

BK No. 11-13755

## **DISCUSSION**

Reduced to its essentials, Blanchard's position is quite simple, and at the same time – pointless. He contends that: based upon an alleged stock ownership, he retained an equitable interest in the property, i.e., the assets of the dissolved Cubby corporation; that said interest was property of the estate and was, therefore, protected by the automatic stay when he filed his 2008 bankruptcy case; that Reservoir had actual notice of said interest through his (Blanchard's) amended Schedule E; that Reservoir violated the stay when it proceeded, post-petition, to foreclose the tax title; and that, based on those allegations, this Court should order the Superior Court to vacate its foreclosure order so that Blanchard can then bring this asset into his Chapter 13 case "for the benefit of his creditors."

For openers, the "Anti-Injunction Act," 28 U.S.C. § 2283, states that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  See *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970).  Throughout his argument Blanchard assumes that somehow the property will rise from the ashes free and clear, as an asset that can be used to fund his plan, but totally

4

BK No. 11-13755

overlooks the silver bullet needed to achieve such a ludicrous pipe dream.

But Blanchard has not even superficially addressed any of the potential questions that will undoubtedly arise if he gets the relief he seeks, for example: (1) Would the Cubby mortgage and other encumbrances on the property be reinstated? (2) Would the property be included as an asset in this case? (3) Who would pay the taxes Cubby failed to pay before the tax sale, and any subsequently paid taxes? (4) As the receiver of Cubby in the Delaware dissolution proceeding, what are Blanchard's obligations to Cubby's creditors? (5) Is there a conflict vis-a-vis Blanchard's creditors in this case? (6) What is the status of Beachwood Builders, the third party purchaser of the property? (7) In the end, would there be any equity in the property for creditors in this case?

Blanchard's argument that by virtue of the amended Schedule E, Reservoir had actual notice of his equitable interest in the Cubby lot, rests on classic *post hoc* analysis. While Blanchard argues that Reservoir had notice, he neglects to explain the nature of said notice. In his petition to the Delaware Court of Chancery, dated July 8, 2011, seeking appointment as receiver of Cubby, Blanchard represents only that in "late April 2011" he discovered "that Cubby had been dissolved and that it remained the record

5

BK No. 11-13755

owner of the property." So Blanchard's position is that, as its sole shareholder, he had an equitable interest in Cubby's assets after the 2005 dissolution, an interest that was not disclosed in the 2008 case, and of which he had no knowledge until "late April 2011," well after his 2008 bankruptcy had been dismissed. How Reservoir is expected, through Blanchard's filing of his amended Schedule E, to divine knowledge of such an interest, now allegedly protected by the automatic stay, is not addressed. Finally, Blanchard makes the incomprehensible argument that even though he had no knowledge of any alleged interest until "late April 2011," Reservoir had greater knowledge than he, himself, had of said mysterious interest. Illogically, Blanchard holds Reservoir to a crystal ball standard of clairvoyance, while completely excusing his own ignorance of facts critical to support his argument.

Assuming arguendo only, that under Delaware law Blanchard did have an equitable interest in Cubby's post-dissolution assets, that interest would have been property of the 2008 bankruptcy estate under 11 U.S.C. § 541. And if that were the case, said interest would have been administered appropriately at that time by the case Trustee. In any event, any rights that may have been acquired by Blanchard but not then asserted, have been waived, and are barred by laches.

BK No. 11-13755

Additionally, while "[t]here is no requirement that the party stayed be notified of or even aware of" the bankruptcy in order for the stay to take effect, *In re Thane Development Associates, LP*, 143 B.R. 310, 311 (Bankr. D. Mass. 1992), violation of the stay is not always a strict liability offense. *Vahlsing v. Commercial Union Insurance Co.*, 928 F.2d 486, 490 (1st Cir. 1991), i.e., if a creditor has no actual or constructive notice, a stay violation may be merely technical, as opposed to a willful contemptuous act. *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004). In this case, Reservoir had no notice of the automatic stay until it was served with Blanchard's instant motion, long after all of the operative events. "While the automatic stay is significant, it is not an immutable article of faith ... [and bankruptcy courts have the] ... discretionary power in certain circumstances to terminate, annul, modify or place conditions upon the automatic stay." *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997). "Each case is sui generis" and a "remedy like retroactive relief from the automatic stay must rest on a set of facts that is both unusual and unusually compelling." *Id*. at 977. Such circumstances are present here. "[I]t is the creditor's knowledge ... that is relevant to the question at hand", that is, whether retroactive relief should be granted. 107 F.3d at 978. Clearly, Reservoir had no knowledge of Blanchard's alleged interest in the Cubby lot (Blanchard himself had no knowledge of

BK No. 11-13755

any alleged interest in this asset until late April 2011). The amendment to Blanchard's 2008 schedules adding the Town of North Smithfield as a creditor apprised Reservoir only that Blanchard considered the Town a creditor. This is not surprising, since Blanchard owned and was living in abutting property which was subject to North Smithfield's taxing power, for which Blanchard was personally liable.

Clearly, Blanchard has slept through any rights he may have had to the Cubby lot. The instant motion was filed more than two years after the actions that Blanchard says violated the stay, and more than three years after Cubby filed its answer to Reservoir's tax foreclosure action. It comes nearly one year after he became aware of an alleged "equitable interest" in the Cubby asset, after the property was transferred to a third party purchaser for value, and more than four months after filing his 2011 bankruptcy.

Blanchard now asks this Court for extraordinary relief by imposing a stay, but then offers no roadmap for the rest of the journey. The Court's own questions about the consequences of the relief Blanchard seeks, see page 6 supra, are unaddressed. Based on the information presented by the parties, property worth $50,000 with $200,000 of encumbrances, suggests a matter ripe for relief from stay even if Blanchard had scheduled the property in his 2008 case. To turn back the clock, as Blanchard requests, on such a

BK No. 11-13755

speculative errand, "for the estate," would provide no discernable benefit to creditors.  For a Court to grant such relief with not a hint as to how the case should proceed thereafter, would be as specious an act as Blanchard's request itself.

Therefore, for the many reasons discussed above, (1) Blanchard's Motion to Impose/Enforce the automatic stay is **DENIED**; (2) to the extent that any form of stay *may have existed* regarding Reservoir's actions, it is **VACATED;** and (3) Reservoir is **GRANTED** relief from such stay retroactively.

Enter.

                                              Arthur N. Votolato
                                              U.S. Bankruptcy Court

Entered on docket: 5/4/12